259 P.2d 1039

**DRIESBACH et al. v. LYNCH et al.**

**No. 7908.**

Supreme Court of Idaho.

July 8, 1953.

Rehearing Denied Sept. 2, 1953.

Stephen Bistline, Sandpoint, for appellants Jess Puckett, Jr., and Marjorie Puckett, husband and wife.

Whitla & Knudson, Coeur d'Alene, for respondents.

PORTER, Chief Justice.

Appellants and respondents are the owners of adjoining lands abutting upon Lake Pend d'Oreille in Kootenai County. A dispute arose over conflicting littoral rights claimed by the parties. Respondents brought this action wherein they alleged interference by appellants with the littoral rights and dock facilities claimed by respondents and prayed for an injunction and for both compensatory and exemplary damages. Appellants Puckett and wife, by their answer and cross-complaint, sought an injunction against respondents restraining them from interfering with the property and littoral rights claimed by such appellants and asked for compensatory and exemplary damages. Appellants Lynch and wife, by separate cross-complaints, sought compensatory and exemplary damages for alleged acts of respondents in connection with the dispute between the parties. The vital issue in the case was the proper location of the boundary line between the respective littoral rights of the parties.

A trial was had to the court sitting without a jury on the issue of the littoral rights of the parties. The issue of damages was deferred for later consideration and no evidence was offered or received in respect thereto. The trial resulted in findings of fact, conclusions of law and judgment favorable to the claims of respondents. An appeal was taken by appellants to this court where the judgment of the lower court was affirmed. See Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446.

After the decision by the Supreme Court, the case was again called for trial by jury on the question of damages. Over the objections of appellants, the trial was had and the jury returned a verdict in favor of respondents and against appellants, P. W. Lynch and Jess Puckett, Jr., for the sum of $3,750 compensatory damages and $10,000 exemplary damages. Judgment was entered on the verdict. This appeal is from such judgment.

At the commencement of the trial appellants objected to such trial or any further proceedings in the action on the ground that the court had no further jurisdiction, as one final judgment had been entered which judgment did not reserve for future determination any issue whatever. Such objections were overruled by

the court. Appellants Jess Puckett, Jr. and wife did not participate further in the trial. The other appellants, without waiving any rights, participated in the further proceedings. The ruling of the trial court in this respect is cited as error by appellants.

At the opening of the original trial the following proceedings took place:

"Mr. Knudson: As I understand it, the matter to be submitted to the Court at this time is purely a matter of the title and the rights accompanying the property involved in this action in order that the Court might determine who owns the property that is described or in litigation in this case and the rights of water, the surrounding rights accompanying and the right to maintain a dock and facilities involved in this action.

"It is my understanding that there is no issue to be presented to this Court at this hearing regarding any alleged damages on the part of any of the parties to this action. That is my understanding.

"The Court: That is the Court's understanding. You gentlemen understand it that way?

"Mr. Humphrey: Just to clarify one point in the cross-complaint of Pat Lynch and Grace Lynch, they are alleging damages by reason of trespass and injuries to property owned by the Lynches which is personal property. Now your statement might include the fact that he introduce evidence as to the title to that personal property. That is my understanding.

"The Court: No question of record ownership of property will be considered by the Court. That is a jury matter.

"Mr. Humphrey: I couldn't hear.

"The Court: No question of title to property, real or personal, will be considered by the court and damages relative to that.

"Mr. Humphrey: Damages relative to that?

"The Court: Yes.

"Mr. Humphrey: What I have in mind, for example, under the allegation of the cross-complaint alleging that Pat Lynch had a float house and had electric wires running out to it and alleging the plaintiffs had cut those wires and thrown them into the lake. It is my understanding we are not to present any matter with relation to the float house or wires or anything at this time?

"The Court: That is right.

"Mr. Knudson: Just the right to maintain the docking facilities and title to it and property rights.

"The Court: That is all at this time."

In the recitals contained in the findings of fact and conclusions of law filed in the original trial, we find the following:

"All of the issues involved in this action *except the issue of damages,* having come on regularly for trial before the above entitled Court, * * whereupon all parties announced that they were ready for trial upon all issues involved in this action, *except the issue of damages."* (Emphasis supplied.)

The first finding of fact was as follows:

"That the Court has due jurisdiction over all of the parties to, and the subject matter of, this action upon and in connection with all issues involved in this action *except the issue of damages."* (Emphasis supplied.)

The judgment rendered in the first trial, contains the following recitation: "and all parties having announced that they were ready for trial upon all of the issues involved in this action *except the issue of damages."* (Emphasis supplied.)

█ From the foregoing it is apparent that the court and all the parties understood that the matter and amount of damages was reserved for future determination. No objection appears in the record of the first trial by any of the parties to the procedure adopted by the court and followed by the litigants. Appellants voluntarily consented to the form of procedure adopted by the court and agreed to the manner in which their rights should be submitted for determination and they will not now be heard on this appeal to challenge such procedure as erroneous. In Frank v. Frank, 47 Idaho 217, at page 221, 273 P. 943, at page 944, we said:

"While the opinion in Penninger Lateral Co. v. Clark, supra [22 Idaho 397, 126 P. 524], no doubt announces the proper rule of procedure in such cases, there is the further rule, firmly established in this state, that where a party has consented to or invited the alleged error, the judgment will not be reversed. Gaskill v. Washington Water Power Co., 17 Idaho 128, 105 P. 51; Trask v. Boise King Placers Co., 26 Idaho 290, 142 P. 1073; Dover Lumber Co. v. Case, 31 Idaho 276, 170 P. 108; Powers v. Security Savings & Trust Co., 38 Idaho 289, 222 P. 779. The following statement is found in 4 C.J., p. 714, § 2627, supported by numerous cases: 'Where a party voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain, on appeal or error, that proceedings had in conformity thereto were erroneous.' "

See also, Kleinschmidt v. Scribner, 54 Idaho 185, 30 P.2d 362; State v. Taylor, 59 Idaho 724, 87 P.2d 454; Radermacher v. Daniels, 64 Idaho 376, 133 P.2d 713.

Appellants Puckett make no other or additional assignments of error. Appellants Lynch, in their brief, set out 24 specifications of error. We will not discuss in detail each specification of error, but will consider the questions raised.

Appellants Lynch allege that "The Court erred in admitting plaintiffs' exhibit No. 5 (f. 170–175) and other evidence of acts done by Lynch prior to the time there was any concert and unity of design between him and Puckett." Exhibit No. 5 is a picture of the Driesbach dock showing some obstructions to access thereto. The testimony shows that appellant Lynch was responsible for some of the floating debris and other obstructions prior to the sale of his property to Puckett in March, 1948. However, the picture shows conditions as they were claimed to be by respondents in the years 1947 and 1948 and as maintained after the sale to Puckett. We find no error in the admission of this evidence.

Appellants Lynch complain that the Court erred in admitting, over objection, evidence relative to matters occurring after the commencement of the action in July, 1949, and therefore not within the issues of the case. The matters referred to consist of an altercation between the witness, J. D. Driesbach and appellant Lynch occurring in August or September, 1950, and likewise an altercation between the witness, Joseph Santhony and appellant Puck-ett occurring in 1951. This evidence was not concerned with the matter of compensatory damages, but tended to affect exemplary damages. The trial court erred in admitting such evidence. However, in view of our holding on exemplary damages as hereinafter set out, such error may not require a new trial.

Appellants Lynch urge the court erred in denying their motions that the Court instruct the jury to disregard as to them the testimony of the witnesses, Donald Schaeffer, Max Krackenberg and Elmer Driesbach, in regard to assaults on such witnesses by appellant Puckett. The record is replete with evidence from which the jury could well find that appellant, P. W. Lynch, encouraged, aided and abetted such actions by Puckett. In Helgeson v. Powell, 54 Idaho 667, at page 682, 34 P. 2d 957, at page 963, we said:

"The law seems to be well settled that, where several people actively participate in any manner in the commission of a tort, not only the actual actor or assailant is liable but all others who aid, abet, counsel, or encourage the wrongdoer by words, gestures, looks, or signs are equally liable with him to the injured person."

See also, Lorang v. Hays, 69 Idaho 440, 209 P.2d 733.

Appellants Lynch complain that the court erred in refusing to admit evidence to the effect that Puckett had a permit from

the U. S. Army to construct piling in the disputed area and in refusing to admit evidence that Lynch understood that he had acquired title to the low-water mark of Lake Pend d'Oreille. Such evidence was held properly to be immaterial in the opinion rendered on the first appeal in this case, where only the question of title was involved. At the second trial, where exemplary damages were involved, such testimony was admissible as tending to show appellants acted in good faith under a claim of right. 15 Am.Jur., Damages, 725, sec. 283; Calhoun v. Universal Credit Co., 106 Utah 166, 146 P.2d 284; Wolfsen v. Hathaway, 32 Cal.2d 632, 198 P.2d 1. The trial court erred in sustaining objections to such testimony.

■ Appellants Lynch urge "The Court erred in overruling appellants' objection and admitting the testimony of J. D. Driesbach as to net loss sustained in gasoline sales on records of the Texas Company, which were not produced in court." The evidence shows that the witness testified as to his net loss of profit and not as to his gross loss as was the case in Williams v. Bone, Idaho, 259 P.2d 810, recently decided by this court with opinion filed under date of June 30, 1953. The fact that the witness consulted the records of the Texas Company to find what his gasoline purchases had been does not make his testimony as to net loss of profit inadmissible under section 9–411 I.C.

■ Appellants Lynch allege the court erred in admitting evidence of the reasonable value of dockage space occupied by the Lynch and Tobiason houseboats and the Puckett slip after the commencement of this action. No objection was made to this testimony on the ground that it concerned damages arising after the commencement of the action, and no question was saved for consideration by this court. We, therefore, will not consider whether or not respondents were entitled to prove all continuing compensatory damages arising prior to trial.

■ Appellants Lynch insist "The Court erred in refusing to instruct the jury at the conclusion of plaintiffs' case that they should not award punitive damages against the defendant, P. W. Lynch." It appears to be appellants' contention that the acts of Lynch were done under a claim of right, in good faith and not in an oppressive or malicious manner; and that the evidence will not sustain a judgment for punitive damages against Lynch. Under the record in this case as it stood at the conclusion of plaintiffs' case and at the conclusion of the trial there was ample and abundant evidence to sustain an award of punitive damages against the defendant Lynch, and the court did not err in refusing to instruct the jury as requested by appellants.

■ However, we do not deem the evidence sufficient to sustain the award of punitive damages in the full amount of

$10,000. The record does not show that the appellants Lynch or Puckett were men of wealth; and it does show that they were acting under a debatable claim of right. As we said in a discussion of punitive damages in the recent case of Williams v. Bone, supra, "an award must not be so disproportionate to the actual damages sustained as to be the result of passion or prejudice rather than reason, and an award of exemplary damages must bear some reasonable relation or proportion to the actual damages, the real question being whether passion rather than reason dictated the verdict." The punitive damages allowed by the jury in this case are so excessive when compared with the actual damages as to indicate that the amount thereof was fixed under the influence of passion and prejudice.

In Summerfield v. Pringle, 65 Idaho 300, 144 P.2d 214, where the actual damages were fixed at $20,000, this court reduced the exemplary damages from $15,000 to $1,000. We are of the opinion that the evidence in this case is insufficient to sustain an allowance of punitive damages in excess of $2,500.

The remaining specifications of error of appellants Lynch are not argued in detail in their brief. We have considered the same but find no prejudicial error nor necessity for discussion.

The judgment will be and is hereby affirmed in the sum of $3,750 compensatory damages and $2,500 punitive damages on the condition that the respondents, within thirty days of the going down of the remittitur, file their acceptance of such reduction and the judgment so modified. On failure to do so, the judgment will be reversed in toto and a new trial granted. No costs allowed.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.