[Civ. No. 16577.   First Dist., Div. Two.   Feb. 21, 1956.]

EINAR E. ELM, Appellant, v. WILLIAM A. McKEE et al., Respondents.

Peter A. Ribar for Appellant.

Barfield & Barfield and John K. Hagopian for Respondents.

KAUFMAN, J.—Einar E. Elm appeals from a judgment rendered after jury verdict in favor of defendants in an action brought to recover damages for personal injuries sustained by him when he struck his head against a barber pole attached to respondents' premises. The building was owned by respondent McKee and leased by him to respondent Barsamian as a barbershop.

The complaint contained three causes of action: (1) Negligent maintenance of the barber pole in a manner constituting a dangerous condition of the premises; (2) violation of ordinances of the city and county of San Francisco regulating the overhang of barber poles; (3) maintenance of a nuisance.

The accident was alleged to have occurred on November 26, 1951, between 2:45 and 3 o'clock in the afternoon on a day when it was raining heavily. It is agreed by both parties

that the projection of the barber pole from the face of the building was not more than 14 inches and its lowest point was 5 feet 6 inches above the sidewalk. The barber pole was attached to a barbershop on the south side of 22d Street in San Francisco, between Bartlett and Valencia about 75 feet west of the 22d Street exit from the premises of the trade school attended by appellant. Appellant's car was parked a short distance away. When he was leaving school for the day it was raining heavily so he decided to run to his car. He was a man 6 feet in height, 56 years of age. He was wearing a baseball type cap with a visor. As he turned west the rain was coming down heavily toward him, and he lowered his head to protect his eyes and glasses from the rain, running as close to the buildings as he could. He could see that there was no one on the sidewalk moving in either direction. As his vision was limited upward somewhat, he struck his head against the barber pole and fell to the sidewalk. There was medical testimony that such a blow probably caused the damages alleged.

Appellant testified that this was the only accident he had ever had with this barber pole and that he had not run into it prior to November 25, 1951. A witness, Daniel Dyer, who formerly lived in an apartment building owned by appellant and who usually rode to the trade school with appellant, testified that he had been with appellant on one occasion in October, 1951, when appellant hit his head against the pole. On that day there had been a heavy mist blowing toward them. Appellant's knees buckled as a result of the blow, but he did not fall to the sidewalk. Appellant's counsel used a prior written statement made by this witness in order to impeach him. He then asked that this statement be introduced in evidence as plaintiff's Exhibit No. 4. This statement related that the accident which Dyer had witnessed occurred in November, and that later that month, during a period when the witness had missed school, appellant told him that he had struck the pole again.

The record does not show when the building was built or when the barber pole was installed. It was stipulated at the trial that respondents McKee acquired the property on August 23, 1923. The barber pole was there at that time and has remained there continuously. No permit for the pole was ever obtained by the owners or by the tenant barber, respondent Barsamian.

Appellant's complaint set forth certain sections of an ordinance of the Building Code of the City and County of San

Francisco. Section 321(a) of said ordinance provided that no barber pole may hereafter be placed or maintained upon or in front of any building without a permit therefor. Section 4307 provided that hereafter it would be unlawful to maintain any sign, bulletin board, barber pole, etc. wholly within the property line or projecting beyond it unless it should be included in the classification of section 4310. This section further provided it should not render unlawful the maintenance of any sign erected under a lawful permit prior to October 19, 1936. Section 4310(d) provided that barber poles "may project not more than fourteen inches from the face of the building, and shall not have their lowest point less than eight feet above the sidewalk." The answer admitted that the Building Code contained this ordinance but alleged that it had no application because defendant believed the barber pole to have been erected prior to the enactment of the ordinance. At the trial it was shown that this ordinance was enacted in 1948.

Appellant contends that prejudicial error was committed in the admission of evidence that the barber pole had been on the premises when respondent McKee acquired the building in 1923. It is true that the negligence pleaded in the complaint is for negligent *maintenance* of the pole as a dangerous, unreasonable and unlawful obstruction of a public street. However, in the first count which is for negligently maintaining the pole, it is alleged that "the defect existed for such a length of time, and created such a dangerous condition in said public street and way that danger to persons lawfully traveling over and upon said sidewalk in the usual mode might reasonably have been apprehended at any time by defendants, and defendants knew or should have known that the same was dangerous." This testimony would appear to have been advantageous to appellant under this count to establish knowledge of the condition on the part of the respondent for a considerable length of time prior to the accident. Since it was properly admissible under the first cause of action, no error was committed.

It is claimed that the trial court erred in admitting hearsay evidence that appellant had a prior accident with the same barber pole. Counsel for respondents in cross-examining appellant's doctor brought before the jury an alleged accident with the same barber pole prior to November 26, 1951, while appellant was in the company of the witness Dyer. Objection having been made, the court stated that she

would consider it a mistrial unless respondents produced such testimony. Later, the witness Dyer on direct examination testified to a somewhat similar accident to appellant which he asserted had happened in October, 1951, and which he had witnessed. Appellant's testimony was that he was alone at the time of the accident, that only one accident had occurred, and that had been on November 26, 1951. Dyer was asked if appellant had complained to him of dizziness, nausea, and the like sometime in October. He answered in the affirmative, and the following then occurred:

"Q. Now can you tell us this, Mr. Dyer: At any time following that particular occurrence here in October of 1951 —just answer me yes or no now—was it ever brought to your attention that in November of 1951 Mr. Elm had struck his head against that barber pole? A. Well, it was only through hearsay, however; I wasn't present. Mr. Ribar. I will object to that, your Honor, and ask that the answer be stricken. The Court. It may go out. Mr. Barfield. May the first, just the 'yes,' your Honor, remain? The Court. Yes, that will remain. Mr. Ribar. That's what I mean, after the 'yes.' The Court. Yes."

From the exchange of court and counsel it clearly appears that counsel for appellant acquiesced in the ruling of the court and he cannot now complain that evidence of another accident was not properly brought before the jury.

Appellant after using a prior written statement by Dyer for impeachment purposes, then introduced it in evidence as plaintiff's Exhibit 4, placing no restriction on the purpose of its admission in evidence. That statement contained the information that the accident which Dyer had witnessed occurred in November, that later that month he missed school for a week, and during that period appellant told him that he had struck the pole again. It is urged that since this statement was admissible for impeachment only, it is not competent proof of the truth of the statements, citing *Kroplin* v. *Huston,* 79 Cal.App.2d 332, 344 [179 P.2d 575]. However, if appellant wished the jury's consideration of this statement limited to impeachment purposes only, he should have asked for an instruction so limiting the use of this evidence. (27 Cal.Jur. 169, § 143.) There is nothing in the record to indicate that such an instruction was requested.

At appellant's request the jury was instructed as follows:
"You are instructed that at the time of the accident in

question, an ordinance of the City and County of San Francisco provided that it shall be unlawful for anyone to place or maintain upon, or in front of, or attach to, any building or premises, any barber pole which has its lowest point less than 8 feet above the sidewalk.

"In this connection, you are instructed that the violation of this ordinance is a violation of a rule of positive law and is negligence in itself."

"You are further instructed that at the time of the accident in question, an ordinance of the City and County of San Francisco provided that it shall be unlawful for anyone to place, maintain upon or in front of, or attach to any building, structure or premises, any barber pole without securing a permit therefor from the Central Permit Bureau of the Department of Public Works.

"A violation of this ordinance is a violation of a rule of positive law and is negligence in itself."

This was followed by a short instruction on contributory negligence, and immediately thereafter, the following instruction requested by respondents was given:

"You are instructed that the violation of a statute or municipal ordinance is presumptively an act of negligence unless such violation, if any, may be excused or justified and it is a question of fact for you to decide whether or not the violation of an ordinance or a statute, if any there was, was excused or justified under all the facts and circumstances of this case."

The instruction on justification is attacked as being inapplicable in the present case, since the record contains no evidence of excuse or justification. ██ Even though an instruction is proper in form, if it finds no support in the evidence, it is prejudicial error to give it if it is calculated to mislead the jury. (*Davenport* v. *Stratton*, 24 Cal.2d 232, 254 [149 P.2d 4].)

Respondents say that it was a question of fact for the jury to decide whether the violation of the ordinance was excusable or justifiable under the facts and circumstances of this case. They also cite *Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 633 [275 P.2d 761], for the proposition that "nonnegligent ignorance of the facts which bring a regulation into operation will support a finding that violation thereof is civilly excusable." In the cited case a safety order prohibited operation of a derrick in close proximity to high-voltage wires, and it was argued that plaintiff in so operating

the derrick was guilty of contributory negligence as a matter of law. Plaintiff there testified that he had not seen the wires before he was injured. In the present case there is no comparable "nonnegligent ignorance of facts," for respondents in their brief state the following:

"It was stipulated at the trial that these defendants and respondents acquired the property on which the barber shop was located on August 8, 1923. The barber pole was there at the time and they permitted it to remain. They never applied for or received a permit to maintain it. The projection of the barber pole from the face of the building was not more than 14 inches and its lowest point was 5 feet 6 inches above the sidewalk."

In view of these admissions it cannot be said that there is any fact question as to the location of the barber pole or the knowledge of respondents as to its existence at that location. Respondents argue that long user permitted the inference that the barber pole was constructed and maintained under a permit, citing 2 Shearman & Redfield, 872, section 358. That section, however, states further that this presumption may be dispelled by proof that a permit has, in fact, never been issued. In the instant case appellant proved that no permit had been issued back as far as 1906 by bringing in the records of the city and county department concerned therewith. Respondents' testimony established only that the pole was there since 1923. Therefore, in this case, on the basis of the above evidence, the jury would not be allowed to infer that the pole was maintained under a permit.

Since there is no evidence in the record to establish justification or excuse, the instruction on this subject was misleading and prejudicial. (See *Davenport* v. *Stratton, supra.*) Appellant also notes that respondent McKee testified that he didn't get a permit, that he didn't think it was up to him, that the man who put the barber pole there should have obtained the permit. This testimony which was being read to the jury from a deposition by the court and counsel for appellant was objected to by appellant's counsel. His objection was based on the ground that the testimony was incompetent, irrelevant and immaterial, but the objection was overruled and he was ordered to read the answer. The objection was good. Ignorance of the law could not excuse the violation of the ordinance (see *Carlson* .v. *Shewalter*, 110 Cal.App.2d 655, 658 [243 P.2d 549]) and in view of the instruction on excuse and justification this incompetent evidence might lead to speculation that perhaps respondents

were excused if they did not know that a permit was required or believed the duty to obtain one was on some person other than themselves.

Appellant maintains that conflicting instructions were given in regard to the law governing nuisance. At appellant's request the following instruction was given:

"It is the law of this state that anything which unlawfully obstructs the free passage or use, in the customary manner, of any street, is a nuisance. . . . The maintenance of the barber pole projecting over the street more than 8 inches and at a distance of approximately 5 feet 6 inches above the sidewalk was a nuisance."

Then at respondent's request the court instructed as follows:

"I instruct you that not every obstruction constructed or maintained in the area between the curb and the property line constitutes a nuisance. The test is whether such obstruction is unreasonable and does it make the sidewalk unsafe for use by the public in the customary manner."

The latter instruction appears to have been improper in this case. The test is not "whether such obstruction is unreasonable and does it make the sidewalk unsafe for use by the public in the customary manner," but the test is, as defined by section 3479, Civil Code, and as set forth in the first instruction, whether it *unlawfully* obstructs "the free passage or use, in the customary manner" of any street. In *Curtis* v. *Kastner*, 220 Cal. 185, 188 [30 P.2d 26], the court declared that "The court's finding that defendant could not have anticipated that an accident would result from the projecting eaves and rafters might relieve her were negligence the basis of plaintiff's right of recovery, but it does not defeat liability arising from a condition which constitutes a nuisance irrespective of negligence in its creation or maintenance." Here, the ordinance has established that the barber pole projecting out over the sidewalk 14 inches and at a height of 5 feet 6 inches was unlawfully maintained. The jury were first plainly told that this was true, and then were told in an instruction shortly thereafter that a fact test was to be applied by them in determining whether or not a nuisance existed. Although there is sufficient evidence in this case on which the jury could have made a finding of contributory negligence on the part of appellant, it cannot be said that he was guilty of contributory negligence as a matter of law. Under these circumstances, the conflicting and erroneous instruction constituted prejudicial error.

An instruction on unavoidable accident was given at respondents' request. They contend that it was properly given, citing *Hughes* v. *MacDonald,* 133 Cal.App.2d 74 [283 P.2d 360]. That was a case in which it was proper for the jury to decide whether there was justification for violation of certain sections of the Vehicle Code by defendant. It was held that it was not error to have given the instruction since it could not be held as a matter of law that the violation of the ordinance was a proximate cause of the injury. In the instant case, if the jury believed that the accident did in fact happen to appellant, the presence of the barber pole at the illegal height necessarily was a contributing factor.

When it is for the jury to decide whether the injury was proximately caused by the negligence of a defendant, the giving of such an instruction is not error. In *Parker* v. *Womack,* 37 Cal.2d 116, 122 [230 P.2d 823], it was pointed out that in cases where the negligence of defendant is established as a matter of law (and we assume that means negligence proximately causing the accident) the giving of such an instruction is prejudicially erroneous. (And, see *Driver* v. *Norman,* 106 Cal.App.2d 725 [236 P.2d 6].) Under the evidence in this case the giving of the instruction on unavoidable accident was prejudicial error.

The instruction which told the jury that a verdict against one defendant did not necessarily compel a verdict against the other defendant, and that the liability of the owner and the liability of the tenant must be based upon the negligence of each was not erroneous. This was not a case in which the doctrine of *respondeat superior* was to be applied. Furthermore, the jury were provided with verdict forms for a verdict against both defendants, one for a verdict against the tenant Barsamian only, and one for a verdict against only the defendants McKee and another for a verdict for all defendants. Appellant made no objection to the forms of verdict. Respondents note that there is no showing of prejudice in view of the fact that the verdict was returned in favor of *both* defendants.

Appellant complains of the large number of instructions, eight in all, given on contributory negligence, contending that this issue was unduly emphasized. Contributory negligence was, however, a proper defense to each of the three causes of action pleaded. If the instructions have stated the law correctly, no prejudicial error has been committed. (*Ornales* v. *Wigger,* 35 Cal.2d 474, 480 [218 P.2d 531].)

It is asserted that two of the instructions on contributory negligence were erroneous because they were formula instructions and omitted the essential element of ordinary care "under the same or similar circumstances." They simply used the term "ordinary care." That term was properly defined in another instruction, and the jury was given the customary instruction that the entire charge must be considered as a whole. Negligence and contributory negligence were also correctly defined in other instructions, hence it does not appear that the jury could have been misled.

There was no error in refusing to give appellant's instruction that "plaintiff had a right to assume that the sidewalk was in a safe condition and would be unobstructed," since this was covered by another instruction even more favorable to appellant. The instruction on the presumption of due care in appellant's favor was properly refused since appellant testified fully as to his own conduct. (*Ford* v. *Chesley Transp. Co.*, 101 Cal.App.2d 548, 552 [225 P.2d 997].) Finally, the instruction refused regarding the safety of leased premises was adequately covered by another instruction.

Prejudicial error appearing in the record before us, the judgment must be reversed.

Judgment reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied March 22, 1956, and respondents' petition for a hearing by the Supreme Court was denied April 18, 1956.